**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**NATIONAL LABOR RELATIONS BOARD,**

   Petitioner,

 vs.            Civil Action 2:11-CV-112
                Judge Marbley
                Magistrate Judge King

**GREIF BROTHERS, INC.,**

   Respondent.

<u>**REPORT AND RECOMMENDATION**</u>

   This matter is before the Court on the application of the National Labor Relations Board ("the Board") for an order requiring obedience to a subpoena *duces tecum*, Doc. No. 1 ("*Application*"). For the reasons set out below, it is **RECOMMENDED** that the *Application* be **GRANTED**.

**I. BACKGROUND**

   This dispute arises out of the Board's attempt to investigate an unfair labor charge filed by the United Steelworkers of America, Local 14514-84 ("United Steelworkers"). On November 2, 2010, the United Steelworkers filed a charge against Greif Brothers, Inc. ("Greif Brothers" or "respondent"), alleging that Greif Brothers retaliated against a union representative, Daniel Walsh, by discharging his son, Justin Walsh (generally, "the Charge").[1] *Exhibit A* and *Exhibit B*, attached to *Memorandum in Support of Application for Order Enforcing*

---

[1] At the hearing, counsel indicated that Justin Walsh was hired in May 2007 and discharged in or around October 2010.

*Subpoena Duces Tecum*, Doc. No. 1 ("*Memo.*").[2] The Board represents that, in November 2010, after initiating an investigation of the Charge, it asked respondent for certain information related to the Charge. *Memo.*, p. 2. Unable to obtain the documents through less formal methods, the Board issued a subpoena *duces tecum* to respondent on December 14, 2010 ("the subpoena"). *Exhibit C*, attached to *Memo*. Specifically, the subpoena identified five categories of documents to be produced by December 28, 2010:

1. All internal memoranda and records the Employer [Greif Brothers] relied upon in discharging Justin Walsh.

2. All attendance records of all employees currently employed by Employer.

3. The personnel files of all employees who have been terminated since January 1, 2010 to the present, including his/her attendance records.

4. All notes, emails and internal documents issued between/among managers relating to grievances and NLRB charges filed by Mr. Danny Walsh.

5. The collective-bargaining agreement and all attendance policies and FMLA policies in effect from August 1, 2009 to the present.

*Id*. at 1, 3-4.

The Board represents that, on January 13, 2011, respondent produced some of the subpoenaed documents. *Memo.*, p. 2. Unable to obtain the remainder of the requested documents, however, the Board filed its *Application* on February 3, 2011.[3]

On May 23, 2011, the undersigned conducted a hearing on this

---

[2]United Steelworkers filed an amended charge on November 23, 2010, which appears to contain the same, although more detailed, allegations. *Exhibit B*.

[3]The matter was referred to the undersigned for a hearing and report and recommendation. *Order*, Doc. No. 2.

matter ("the hearing").  Doc. No. 13.  All parties were represented by counsel.

**II.  STANDARD**

The Board has broad authority to subpoena documents of "any person[4] being investigated or proceeded against that relates to any matter under investigation or in question."  29 U.S.C. § 161(1); *NLRB v. N. Bay Plumbing*, 102 F.3d 1005, 1007 (9th Cir. 1996) (noting that the Board has "broad investigatory powers" under 29 U.S.C. § 161).  *See also NLRB v. Detroit Newspapers*, 185 F.3d 602, 605 (6th Cir. 1999) (stating that the subpoena must seek "relevant material") (quoting *EEOC[5] v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994)).  Relevance of the material sought is broadly interpreted.  *NLRB v. Am. Med. Response, Inc.*, 438 F.3d 188, 193 (2nd Cir. 2006).  Therefore, subpoenas issued by the Board may properly seek "'evidence [that] relates to or touches the matter under investigation.'"  *NLRB v. Dutch Boy, Inc.*, 606 F.2d 929, 932 (10th Cir. 1979) (quoting *Cudahy Packing Co. v. NLRB*, 117 F.2d 692, 694 (10th Cir. 1941)).

If a person refuses to comply with a subpoena issued by the Board, the "district court . . . shall have jurisdiction to issue to such person an order requiring such person to appear before the Board . . . to produce evidence if so ordered."  29 U.S.C. § 161(2).  Determining whether or not to issue such an order falls within the

---

[4]"The term 'person' includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in cases under title 11 of the United States Code, or receivers."  29 U.S.C. § 152(1).

[5]The EEOC has the same investigative powers as the NLRB in 29 U.S.C. § 161.  *See* 42 U.S.C. § 2000e-9.

district court's discretion, *Detroit Newspapers*, 185 F.3d at 605, but the court "may undertake only an extremely limited inquiry." *NLRB v. Frederick Cowan and Company, Inc.*, 522 F.2d 26, 28 (2nd Cir. 1975). When seeking enforcement, the Board need only show that the "investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." *United States v. Powell*, 379 U.S. 48, 57-58 (1964). Nevertheless, if the respondent establishes that the subpoena imposes undue burden, the subpoena should not be enforced. *Detroit Newspapers*, 185 F.3d at 605 (quoting *Ford Motor Credit Co.*, 26 F.3d at 47); *Am. Med. Response, Inc.*, 438 F.3d at 192-93; *NLRB v. Bakersfield Californian*, 128 F.3d 1339, 1341 (9th Cir. 1996); *NLRB v. Carolina Food Processors*, 81 F.3d 507, 513 (4th Cir. 1996). Accordingly, in determining whether or not to order compliance, "'this court's task is to weigh the likely relevance of the requested material to the investigation against the burden . . . of producing the material.'" *Detroit Newspapers*, 185 F.3d at 605 (quoting *Ford Motor Credit Co.*, 26 F.3d at 47).

**III. DISCUSSION**

As set forth in more detail below, the parties have narrowed the scope of the categories of documents currently in dispute.

**A. Documents Relied Upon in Discharging Justin Walsh (Category No. 1)**

Responsive documents have been produced and the parties agree that no dispute remains as to this request.

**B. Current Employees' Attendance Records (Category No. 2)**

Respondent has previously produced disciplinary records of all employees disciplined[6] within a two-year period.  However, the Board complains that two types of documents responsive to Category No. 2 have not been produced.  First, the Board still seeks production of attendance or "punch" records tracked by respondent's KRONOS computer system. Second, respondent requests production of respondent's employee attendance logs upon which respondent bases its disciplinary records.[7] The Board argues that both these types of records are relevant to its investigation because they will permit the Board to compare the attendance and disciplinary records of all other employees with that of Justin Walsh.

Respondent has agreed to produce the attendance logs, but objects to production of the KRONOS data.  Specifically, respondent argues that such data is not relevant to the Board's investigation because it does not record all attendance information; according to respondent, KRONOS data is simply a record of when employees punch in and out of work and does not, for example, reflect days missed by an employee. Respondent represents that it is the paper log upon which a local plant relies when meting out discipline, not the KRONOS records.  In addition, respondent's counsel advised that he does not know where the KRONOS data is stored, but suggests that locating and gathering this information could be burdensome, time-consuming and expensive.

---

[6]According to counsel, respondent maintains a disciplinary system in which an employee receives "points" (or possibly half points or quarter points) for certain types of behavior, including attendance problems.

[7]The Board seeks these records as they relate only to respondent's Huntington, West Virginia, facility.  Counsel agree that this facility employs 26-30 individuals.

Respondent's arguments are not well-taken.  The Court agrees with the Board that the KRONOS information "relates to" the Board's investigation of Justin Walsh's discharge.  *See* 29 U.S.C. § 161(1).  Although respondent suggests that gathering this information might be burdensome, its counsel concedes that he simply does not know how the KRONOS data is maintained or whether it may be retrieved without undue burden.  Under these circumstances, and considering that the Board is seeking information relating to no more than 30 employees at only one facility, the Court concludes that respondent has not established that compliance with the subpoena in this respect will be unduly burdensome. Respondent must therefore produce the requested documents.  *See Detroit Newspapers*, 185 F.3d at 605.

    **C.**    **Personnel Files of Employees Terminated Since January 1, 2010 (Category No. 3)**

Respondent has produced disciplinary and personnel records for three individuals.  Respondent's counsel represents that he will confirm that this production is complete, *i.e.*, confirm that the production redacts only information relating to particularly sensitive information for each employee, such as bank, IRS and medical records.  With that representation, the Board is satisfied with respondent's production.

    **D.**    **Documents Issued Between Managers Relating to Grievances and Charges Filed by Daniel Walsh (Category No. 4)**

The Board seeks "[a]ll notes, emails and internal documents issued between/among managers relating to grievances and NLRB charges filed by Danny Walsh."  *Exhibit B*, attached to *Memo*.  Although respondent produced a packet of materials shortly before the hearing, respondent's counsel did not personally compare the documents produced

6

to the original documents provided by his client.  The Board, which did not have the opportunity to review the packet, is uncertain whether respondent has produced all responsive documents, particularly those generated after Justin Walsh's discharge in October 2010.  At the hearing, the Board's counsel offered to narrow the scope of this subpoena request to a specific time period, beginning on October 1, 2008 and continuing through the present.  The Board contends that this information is relevant to its investigation because it may reflect an unlawful animus against Daniel Walsh and support the allegation that Justin Walsh's discharge was retaliatory.  The Board further argues that even information in this category that post-dates Justin Walsh's discharge is properly discoverable.

Respondent is willing to produce responsive documents for the period between October 1, 2008 and October 20, 2010.  However, respondent's counsel contends that documents created after Justin Walsh's termination are irrelevant. Although the Board has wide latitude in conducting investigations, respondent argues, documents post-dating Justin Walsh's discharge, *i.e.*, documents "to the present," are simply beyond the scope of the Board's investigation.

This Court disagrees.  The Board has broad investigatory authority to subpoena any evidence that "relates to any matter under investigation or in question."  29 U.S.C. § 161(1).  Even documents that post-date Justin Walsh's discharge, if indeed any exist, may nevertheless shed light on the motivation underlying his termination. *See NLRB v. Dutch Boy, Inc.*, 606 F.2d 929, 932 (10th Cir. 1979). Therefore, the Court concludes that the Board is entitled to the production of responsive documents from the period of October 1, 2008

7

through the present.[8]

### E. Collective Bargaining Agreement, Attendance Policies and FMLA Policies Effective From August 1, 2009 to the Present (Category No. 5)

Documents responsive to Category No. 5 have been produced and the parties agree that no dispute remains as to this request.

**WHEREUPON**, it is **RECOMMENDED** that the *Application for Order Requiring Obedience to Subpoena Duces Tecum*, Doc. No. 1, be **GRANTED** and that the subpoena be enforced consistent with the foregoing.  It is **SPECIFICALLY RECOMMENDED** that respondent be required to make its production within 21 days of the date of this *Report and Recommendation*.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation.*

---

[8] In so concluding, the Court notes that the scope of documents extending "to the present" would have been much more limited had respondent produced documents in a more timely fashion, *i.e.*, sooner than nearly six months after issuance of the subpoena in December 2010.

*See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

May 26, 2011                                         s/Norah McCann King
                                                     Norah M<sup>c</sup>Cann King
                                            United States Magistrate Judge